UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRENCE G.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-77-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in excluding bipolar disorder as a severe impairment at step two, in discounting an examining psychologist's opinion, and in finding that he could perform his past relevant work at step four. (Dkt. # 11 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the case for further administrative proceedings.

## II. BACKGROUND

Plaintiff was born in 1953, has a college degree and some graduate education, and has worked as a taxi dispatcher, fast food driver, personal caregiver, temporary laborer, and concession worker. AR at 407, 630. Plaintiff was last gainfully employed in 2015. *Id.* at 407.

| | |
|---|---|
| 1 | In October 2015, Plaintiff applied for benefits, alleging disability as of August 21, 2015. |
| 2 | AR at 380-87. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff |
| 3 | requested a hearing. *Id.* at 290-303, 206-25, 329-20. After the ALJ conducted a hearing on July |
| 4 | 11, 2017 (*id*. at 201-31), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 13-23. |

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff's lithium toxicity is a severe impairment.

Step three: This impairment does not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: he can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk six hours in an eight-hour workday. He can frequently climb ramps and stairs, stoop, and crawl. He must avoid concentrated exposure to extreme cold, vibration, and hazards such as heights and dangerous moving machinery. He has sufficient concentration, persistence, and pace for complex and detailed tasks performed in two-hour increments with usual and customary breaks throuought an eight-hour workday. He should have only occasional contact with supervisors and he should not work in coordination with his co-workers (i.e., he can work in the same room with co-workers but no coordination of such as in a conveyer belt situation where the final product is dependent on each other).

Step four: Plaintiff can perform past relevant work and is therefore not disabled.

AR at 13-23.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

---
[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   Any Error at Step Two is Harmless

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1520(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*

*v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985)).

In this case, the ALJ noted that Plaintiff had bipolar disorder, but found it to be not severe because it did not cause significant limitations as to the "paragraph B" criteria of the mental disorders listings. AR at 17. Plaintiff devotes pages of his brief to arguing that this finding is erroneous (dkt. # 11 at 8-13), and contends that this error is harmful because if the ALJ had found bipolar disorder to be severe, "the RFC and hypothetical questions posed to the vocational expert ("VE") would have contained additional limitations." (Dkt. # 11 at 13.)

This argument is not persuasive for several reasons. It does not logically follow that a finding of severity would have led to the inclusion of additional RFC restrictions, because an ALJ must account for all limitations caused by medically determinable impairments, even if they are not severe. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) ("[Plaintiff] posits that a severe impairment, by definition, inhibits a claimant from engaging in "basic work activities," and the ALJ's statement of her RFC does not capture that limitation. [Plaintiff] offers no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities."); SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). If medical evidence indicates that a claimant's impairment causes a particular limitation, and the ALJ does not include that limitation in the RFC assessment, then the error lies in the ALJ's assessment of the medical evidence rather than a failure to include the impairment at step two. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the

adjudicator must explain why the opinion was not adopted."). Thus, step two is not the proper location for an argument regarding the insufficiency of the RFC assessment.

Furthermore, because the ALJ found Plaintiff not disabled at step two, any error in the step-two findings must be harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[S]tep two was decided in [plaintiff's] favor after both hearings. He could not possibly have been prejudiced."). The Commissioner cited *Buck* in his response (dkt. # 14 at 5), but Plaintiff did not distinguish this case in his reply (dkt. # 15 at 4-7). Because Plaintiff has failed to identify a harmful error in the ALJ's step-two findings, this portion of the ALJ's decision is affirmed.

### B. The ALJ Did Not Err in Assessing the Medical Opinion Evidence

J. Alex Crampton, Psy.D., examined Plaintiff in September 2015 and completed a DSHS form opinion summarizing his symptoms and limitations. AR at 630-34. The ALJ summarized Dr. Crampton's findings, noted that he reviewed no records before rendering his opinion, and found his conclusions "inconsistent with normal mental status exam findings and the overall medical evidence of record." *Id.* at 21. An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216. Plaintiff argues the ALJ's reasons for discounting Dr. Crampton's opinion are not legally sufficient, and the Court will consider each reason in turn.

The ALJ did not err in noting that Dr. Crampton did not have the benefit of reviewing records when rendering an opinion on Plaintiff's functioning. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) ("the extent to which a medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion"). This is a particularly relevant factor here, where Dr. Crampton's examination was performed less than one month after Plaintiff's lithium toxicity and the ALJ gave significant

weight to another examining psychologist, Katherine Kelly, Ph.D., who reviewed records from before and after Plaintiff's lithium toxicity. AR at 21, 768-73.

The ALJ also properly noted that the record contains many normal mental status findings among few abnormal findings, and reasonably found these findings contradict Dr. Crampton's description of disabling limitations. *See, e.g.*, AR at 633-34, 700, 770-71, 789-90, 795, 799, 806, 810, 820, 833. Again, Dr. Kelly had the opportunity to review more of the longitudinal record and perform additional memory testing, and reached different conclusions than Dr. Crampton. *See id*. at 768-73. The ALJ did not err in discounting Dr. Crampton's opinion under these circumstances. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

**C.     The ALJ Must Reconsider the Step-Four Findings**

At step four, the claimant bears the burden of demonstrating that she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). Past relevant work is work (1) performed within the past fifteen years, (2) constituting substantial gainful activity ("SGA"), and (3) lasting long enough for the individual to have learned how to perform the work. 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a). SGA "is work done for pay or profit that involves significant mental or physical activities." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1571-404.1572 & 416.971-416.975). In 2015, average earnings of more than $1,090.00 per month ordinarily show that work is SGA, while average monthly earnings below that amount generally show a claimant has not engaged in SGA. *See* 20 C.F.R. §§ 404.1574(b); https://www.ssa.gov/oact/cola/sga.html (last visited September 3, 2019). However, earnings are a presumptive, not a conclusive sign of whether a job constitutes SGA. *Lewis*, 236 F.3d at 515. The presumption arising from low

earnings shifts the step-four burden from the claimant to the Commissioner. *Id*. "Without the presumption, the claimant must produce evidence that he or she has not engaged in substantial gainful activity; if there is no such evidence, the ALJ may find that the claimant has engaged in such work. With the presumption, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity." *Id*. (noting relevant factors pursuant to the regulations, including "the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is selfemployed [sic], and the amount of time the claimant spends at work." (citing 20 C.F.R. §§ 404.1573, 416.973)).

Plaintiff raises several challenges to the ALJ's findings at step four that he could perform his past relevant work. *See* AR at 22-23. First, Plaintiff argues that the ALJ erred in finding that his past work as a pizza deliverer and fast-food worker constituted SGA. The Commissioner concedes that Plaintiff's past work as a fast-food worker may not constitute SGA, but argues that he worked as a pizza deliverer for long enough to learn how to perform the work because he completed a one-week training. (Dkt. # 14 at 16-17.) The ALJ made no findings about Plaintiff's work as a pizza deliverer, however, and therefore did not overcome the presumption arising from the evidence of his low earnings ($214.59 total) in this job. *See* AR at 22-23 (ALJ's step-four findings), 395 (earnings record), 409 (work history report).

Next, Plaintiff challenges the ALJ's finding that he could perform his past work as a taxicab starter (herein referred to as a "dispatcher," as it is more commonly called) because the RFC assessment is inconsistent with the dispatcher job description. The Commissioner argues that the ALJ properly relied on VE testimony to find that he could perform his past work as a dispatcher even with his social limitations.

ORDER - 7

The ALJ's RFC assessment limits Plaintiff to occasional contact with his supervisors and no "coordination with his co-workers (i.e., he can work in the same room with co-workers but no coordination of such as in a conveyer belt situation where the final product is dependent on each other)." AR at 18. At the hearing, the ALJ described a hypothetical claimant with Plaintiff's RFC to the VE, and clarified that by restricting coordination with his co-workers she meant that he could not coordinate with his co-workers where "one person is dependent on the other for the final production of the item or of the – you know, the production quota." *Id*. at 226-28. The VE testified that this type of coordination was not required in the dispatcher job because the dispatcher would need to coordinate with taxi drivers "in terms of their location and their availability to take calls and those kinds of things[,]" but the dispatcher's work would not be "interwoven" with other dispatchers' work. *Id*. at 227-28.

The VE's focus on the social demands of the dispatcher job only in relation to other dispatchers limits the persuasiveness of her testimony. The ALJ's RFC assessment restricts interdependent coordination with co-workers, which would presumably include the taxicab drivers as well as other dispatchers. AR at 18, 226-28. But the VE described ways in which a dispatcher's work *would* be interdependent and interwoven with the drivers' work in order to successfully connect customers with their taxicabs, which is consistent with the job description in the Dictionary of Occupational Titles ("DOT") describing responding and contacting. *Id.* at 226-28; DOT 913.367-010, 1991 WL 687822. The record contains no explanation of how Plaintiff's RFC could be consistent with a job that requires coordinating drivers with their patrons. In the absence of persuasive evidence to support the deviation between the DOT definition of a dispatcher and the limitations described in the RFC assessment, the ALJ erred in finding that Plaintiff could perform his past work as a dispatcher. *See Johnson v. Shalala*, 60

F.3d 1428, 1434-35 (9th Cir. 1995) ("[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.").

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for additional proceedings. On remand, the ALJ shall reconsider the step-four findings and any other findings as necessary.

Dated this 4th day of September, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge